IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs, May 29, 2003

## STATE OF TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES v. DLSJ, IN THE MATTER OF: CLJ, A CHILD UNDER THE AGE OF 18 YEARS

Direct Appeal from the Juvenile Court for Knox County
No. H3813      Hon. Carey E. Garrett, Judge

FILED AUGUST 11, 2003

No. E2002-00241-COA-R3-JV

The Trial Court on petition of the Department, terminated the mother's parental rights to the child. On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Juvenile Court Affirmed.**

HERSCHEL PICKENS FRANKS, J. delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Mary L. Ward, Knoxville, Tennessee, for Appellant.

Paul G. Summers, Attorney General and Reporter,
and
Douglas Earl Dimond, Assistant Attorney General, Nashville, Tennessee, for Appellee.

OPINION

In this action to terminate the parental rights of CLJ ("child"), DOB: 6/9/93, the record shows the mother has several children and has been the subject of various petitions filed against her. In June 1999, DCS filed a Petition for Temporary Custody, alleging that the child was dependent and neglected due to the fact that he had been badly injured in a fire in January of 1999. He was hospitalized for several weeks and then taken to Patricia Neal Rehabilitation Center. The staff there had tried to involve mother in the child's care and treatment, but had not been successful.

The Petition alleged that a specific plan was developed with mother in April of 1999, but that mother "repeatedly failed to appear for physical therapy sessions with the child, had failed to appear for occupational therapy sessions, had failed to participate in speech therapy, had failed to participate in any training to learn how to administer the child's therapeutic feedings, and the Petition stated that the child was ready to be released, but could not safely be released to mother due to her lack of training regarding the child's care.

The Court then entered a Protective Order of Custody, finding the child was subject to an immediate threat to his health and safety and that there was no less drastic alternative than removal. A Guardian Ad Litem was appointed and permanency plans were formulated, and in October of 2000, on Motion for a Status Review, the Court found that DCS was in compliance with the Plan, and the mother had complied with many aspects of the plan but the child should remain in foster care until permanency plans could be developed. Ultimately, hearings on the termination Petition were held on April 4, 17th and June 4, 2001.

Numerous witnesses were called to testify, and the mother testified on her own behalf. At the conclusion of the evidence, the Guardian Ad Litem stated that he would recommend the child remain in the foster home, because he felt the mother failed to follow through with responsibilities and that if the child did not get proper constant attention, he might regress or even die.

The Court then found that during the child's hospitalization, following his injury, the mother did not visit or participate in his care and was antagonistic toward the hospital personnel. As a result, she was not ready to care for the child when he was released from Patricia Neal, and he was placed in DCS custody. The Court further found the mother was ordered to participate in training to learn to care for the child, and that permanency plans were developed, but the mother did not comply despite efforts of DCS. The Court stated that DCS had been involved with the mother before the fire, and that the mother had a history of drug use, had a child born addicted to cocaine, and she had failed to comply with previous court orders. The Court observed that while the mother knew that caring for the child would be a tremendous responsibility, she had recently had another child out of wedlock and had been sentenced to 11 months, 29 days for failure to have her older children in school. The Court further found the mother was frequently not truthful with DCS and others about her personal life and problems with her other children. The Court said that the child will always require constant and consistent care, and that he had extraordinary needs and would regress unless he received proper care. The Court found the child was in a placement where he was bonded with his foster parents, and they were willing and able to care for him and provide him a loving, permanent home, and that the mother was not capable of providing the care the child required, and that she had consistently displayed an attitude and behavior toward authority[1] that prevented the necessary cooperative effort.

---

[1]A licensed psychological examiner testified that the mother had limits on her intellectual capacity and her scores fell within mildly mentally retarded or borderline range, and that the mother was very impulsive and had difficulty making good plans. The witness characterized the mother as not accepting outside help and tending to minimize problems and situations.

The Court found by clear and convincing evidence that DCS made reasonable efforts to assist the mother in establishing a suitable home for the child, but that the mother had failed to make reasonable efforts, and had demonstrated a lack of concern for the child to such a degree that it appeared unlikely that she would establish a suitable home in the near future. The Court found that the conditions necessitating removal still existed, and that such conditions would likely not be remedied in the near future. The Court found that the mother had failed to comply in a substantial manner with the permanency plan, and the Court found by clear and convincing evidence that it was in the child's best interest to terminate the mother's parental rights.

The issue on appeal is whether there was clear and convincing evidence which would necessitate that the mother's parental rights to the child be terminated?

A parent has a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208 (1972). This right is not absolute, and parental relations may be terminated if there is clear and convincing evidence justifying termination under an applicable statute. *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388 (1982).

In reviewing a trial court's decision to terminate parental rights, we have previously recognized that we must affirm the termination if the record contains clear and convincing evidence to support any of the bases found by the trial court. *In re C.W.W.*, 37 S.W.3d 467 (Tenn. Ct. App. 2000). We have explained that "clear and convincing" is a more stringent requirement than a preponderance, but less stringent than "beyond a reasonable doubt." *O'Daniel v. Messier*, 905 S.W.2d 182 (Tenn. Ct. App. 1995). In this case, the Trial Court terminated the mother's parental rights on the statutory grounds of failure to substantially comply with the plan of care; and the conditions requiring removal still persisted and would not likely be remedied in the near future. *See* Tenn. Code Ann. §36-1-113(g) and (I). Additionally, the Court found that there was clear and convincing evidence that termination was in the child's best interest.

Regarding whether the mother failed to substantially comply with the plan of care, it must be recognized that the mother was asked to do only a few discreet things in the plan of care. She was asked to visit the child regularly and receive training in how to properly care for him, and demonstrate that she had the skills to care for the child, and further was required to attend therapy until successfully released. The evidence shows that the mother made some attempts at compliance, but did not substantially comply with any of these requirements.

Mother's visits were sporadic and she never managed to visit in a consistent manner, and in instances where she failed to show up, she failed to call and let anyone know and failed to reschedule. The mother testified that she tried to visit as much as she could, but that her car sometimes prevented her from going. The case worker testified the mother had access to $240.00 per month in expense money that she could have used for repairs, gas, bus tickets, or whatever, but the mother never utilized this fund. The mother explained that she thought this was only for gas, but she never had a problem getting gas for her car, but it broke down sometimes. The caseworker testified she had explained to mother what the account was for, but the mother refused to cooperate.

While the mother argued that she did everything she could, her testimony was called into question by the testimony of other witnesses, and great deference must be given to the trial court's rulings on issues involving witness credibility. *McCaleb v. Saturn*, 910 S.W.2d 412 (Tenn. 1995).

The mother testified that she could do anything that the school did for the child regarding his therapy and care, but when questioned, seemed to only know basic skills and could not testify with any specificity about what was required of her in caring for the child. Other witnesses testified that the mother never made the effort to consistently be trained or to demonstrate to anyone that she was capable of meeting the child's needs.

The Court also found the conditions which led to removal still persisted, and were not likely to be remedied in the near future. This ground for removal is also dependent on the foregoing, since the child was removed from the mother's care because she could not meet his medical needs. This condition still exists, and there is no indication that it will likely be remedied in the near future, given the length of time that has elapsed with minimal efforts to cope demonstrated by the mother.

Regarding the best interest analysis, our statute expressly provides certain criteria for determining when a termination is in the child's best interests. *See* Tenn. Code Ann. § 36-1-113(I).

It is clear, in light of these factors, that it is not in the child's best interest to be returned to the mother, given the fact that she has not made significant adjustments of her circumstances or conduct to make it safe and in the child's best interest to be in the mother's home. She has not developed or demonstrated the skills necessary to care for him, and it has been shown that she does not exercise good judgment in other instances, such as the truancy and behavior problems with her other children and other relationships. Regrettably, the mother has failed to effect a lasting adjustment after reasonable efforts by the agencies, and has in most instances refused to avail herself of help that was offered to her by those agencies.

There was substantial evidence offered that it would likely be detrimental to the child if his caretakers and physical environment were changed, and the proof demonstrated the child needed constant attention and strict consistency in order to maintain any progress. It was further shown that the mother's mental and/or emotional state could be detrimental to the child receiving the care he needed.

The evidence is clear and convincing that the child's best interest is served by terminating the mother's parental rights. Accordingly, we affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to appellant.

_____
HERSCHEL PICKENS FRANKS, J.

-4-